Carlos F. Negrete, Esq. SBN #134658
**LAW OFFICES OF CARLOS F. NEGRETE**
27422 Calle Arroyo
San Juan Capistrano, CA 92675-2747
Telephone (949) 493-8115
Telefax (949) 493-8170
email: cnegrete@negretelaw.com

Attorneys for Plaintiffs,
Xinhua Holdings Limited,
Xinhua Financial
Network Limited and
Clean Tech Partners, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| Xinhua Holdings Limited, Xinhua Financial Network Limited and Clean Tech Partners, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>Electronic Recyclers International, Inc.; John S. Shegerian a.k.a. John Simone Shegerian a.k.a. John Shegerian, Jr.; Tammie Shegerian a.k.a. Tammi Shegerian; Wang-Liu Shu Hung a.k.a. Yvonne Wang; David Wang; Kevin J. Anton; Keith D. Bronstein; Yong-Seok Jeong; Alexander Ruckdashel and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT;**<br>**2. NEGLIGENCE;**<br>**3. FRAUD;**<br>**4. BREACH OF FIDUCIARY DUTY;**<br>**5. SECURITIES FRAUD;**<br>**6. CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS [RICO];**<br>**7. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE;**<br>**8. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ADVANTAGE;**<br>**9. QUASI-CONTRACT/ RESTITUTION;**<br>**10. DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, XINHUA HOLDINGS LIMITED, XINHUA FINANCIAL NETWORK LIMITED and CLEAN TECH PARTNERS, LLC, allege as follows:

**SYNOPSIS OF THE CASE**

1. This action contemplates and sets forth claims based upon a series of transactions between and among Defendants, and each of them, that were tainted and resulted from fraud, deception, illegal conduct and breaches of fiduciary duties, breach of agreement and violations of state and federal securities laws.

2. At all times herein mention, Defendant Electronic Recyclers International, Inc. ("ERI"), was, and continues to be, a Fresno, California based company that is privately owned but soon expected to be offered for public trading.

3. At the times herein mentioned, Plaintiffs Xinhua Holdings Limited ("XHL"), Xinhua Financial Network Limited ("XFNL"), Clean Tech Partners, LLC ("Clean Tech") and other interested parties (collectively referred to as "Xinhua Parties"), owned 1.920 million shares of Series A-1 Preferred stock of Electronic Recyclers International, Inc. ("ERI Shares").

4. On or about May 29, 2012, Plaintiffs entered into a Consulting Agreement ("Consulting Agreement") with Defendant Yvonne Wang, by which she was to act in a fiduciary capacity in favor of Xinhua with respect to sale of the ERI shares.

5. Plaintiffs are informed and believe that at times herein mentioned, Defendants, Wang-Liu Shu Hung ("Yvonne Wang") and David Wang acted in concert to perpetrate the fraud and illegal conduct herein alleged. Defendants, Wang-Liu Shu Hung ("Yvonne Wang") and David Wang (hereinafter collectively referred to as "Wang") have a presence and conduct business in California.

6. On or about December, 2012, Plaintiffs are informed and believe and thereon allege that Wang entered into a purportedly secret, undisclosed, agreement with Defendants, particularly John Shegerian and Tammie Shegerian for the sale/transfer of certain shares of stock under the guise of authority of Plaintiffs ("Stock Transfer Agreement").

7. Under the terms of prior agreements and rights, Plaintiffs and/or their respective principals and/or other shareholders were entitled to a *first right of refusal,*

along with prior notice, of any contemplated transfer and/or sale of ERI shares by Defendants amongst themselves and/or third parties. Defendants, and each of them, not only breached said Agreements by nonperformance but also caused damage to Plaintiff, by means of fraud, deception, illegal and undisclosed conduct that was intended to, and did in fact, lead to an unjust enrichment and financial windfall to Defendants, and each of them.

8. Defendants, JOHN SHEGERIAN and TAMMIE SHEGERIAN are believed to be the masterminds and orchestrators of the scheme and plot to defraud Plaintiffs, along with their co-conspirators.

9. Defendants, JOHN SHEGERIAN and TAMMIE SHEGERIAN are sophisticated investment and stock traders that possess particular and unique experiences, licenses and training which enabled them to perpetrate the fraud and machinations upon Plaintiffs.

10. Defendants, and each of them, are participants in an apparent scheme and pattern of conduct that was seemingly planned, designed and orchestrated to cause damages and losses to my clients by means of a series of transactions, documents and communications that appears to have been disguised as an arm's length transaction, but was, in fact, unlawful under, *inter-alia,* state and federal civil and securities laws.

11. Plaintiffs are informed and believe and thereon allege that the subject transactions were designed for the purpose of your personal gain and profit in addition to enhancing Defendants' individual equity and voting control of ERI.

## PARTIES

12. Plaintiffs, Xinhua, ("Xinhua") is a limited partnership doing business in Hong Kong, China and other parts of the world. It is based in Shanghai, China.

13. Plaintiffs are informed and believe and thereon allege that Defendant, ELECTRONIC RECYCLERS INTERNATIONAL ("ERI") is a Delaware Corporation with its principal place of business located in Fresno, California.

14. Defendant, JOHN SHEGERIAN is an individual and resident of Fresno, California.

15. Defendant, TAMMIE SHEGERIAN is an individual and resident of Fresno, California.

16. Plaintiffs are informed and believe, and thereby allege, that Defendant, Wang-Liu Shu Hung ("Hung") is an individual and has a residence Orange County, California.

17. Plaintiffs are informed and believe, and thereby allege, that Defendant David Wang ("Wang") is an individual and resident of Orange County, California.

18. Plaintiffs are informed and believe, and thereby allege, that Defendant Kevin J. Anton ("Anton") is an individual and resident of Fresno County, California.

19. Plaintiffs are informed and believe, and thereby allege, that Defendant Keith D. Bronstein ("Bronstein") is an individual and resident of Fresno County, California.

20. Plaintiffs are informed and believe, and thereby allege, that Defendant Yong-Seok Jeong ("Jeong") is an individual and resident of Fresno County, California.

21. Plaintiffs are informed and believe, and thereby allege, that Defendant Alexander Ruckdashel ("Ruckdashel") is an individual and resident of Fresno County, California.

22. Plaintiffs are informed and believe and thereon allege that some of the Defendants hold state and/or federal securities broker/dealers/traders license.

23. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each and every Defendants was the agent, employee, joint venture, partner, principal, predecessor, or successors in interest and/or the alter ego of each of the remaining Defendants, and in doing the things herein alleged, were acting, whether individually or through their duly authorized agents and/or representatives, and in furtherance of the purpose, scope and course of said agencies, service employment, joint ventures, partnerships, corporate structures and/or associates, whether actual or

ostensible, with the express and/or implied knowledge, permission, and consents of the remaining Defendants, and each of them, and said Defendants ratified and approved the acts of the Defendants. Plaintiffs are further informed and believe and thereon allege that the Defendants, and each of them, acted as co-conspirators in furtherance of acts and conduct herein alleged.

## JURISDICTION

24. Jurisdiction arises under 18 U.S.C. 1962, based on Plaintiffs' claims of Civil Racketeer Influenced and Corrupt Organizations. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1267.

25. This action arises out of the transaction of business and other activities of Defendants within the Eastern District of California, and actual harm to Plaintiffs in this Judicial District by reason of Defendants' conduct as alleged below. Plaintiffs are informed and believe and thereon allege that Defendants regularly conduct business and derive substantial revenue from doing business in this Judicial District. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District. Accordingly, venue is proper under 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

26. On or about May 29, 2012, Plaintiffs entered into a Consulting Agreement ("Agreement") with Wang by which Defendants were to grant certain shareholder rights and consulting fees based upon certain events and transactions. Defendants, and each of them not only breached said Agreement by nonperformance but also by means of fraud, deception, illegal conduct and undisclosed conduct that were intended to and did in fact lead to unjust enrichment and financial windfalls to Defendants, and each of them.

27. During the time Plaintiffs were deprived of control of the Shares, the market price exceeded $3.00 per share.

28. During the times that Plaintiffs were deprived of their shares of stock, Defendants, and/or affiliates and associates of them sold shares of ERI for their own

substantial financial benefit.

29. Plaintiffs are informed and believe that Defendants, and each of them, particularly SHEGERIAN traded personal share of stock of ERI during the times herein mentioned and thereby personally profited by the scheme to withhold Plaintiffs shares of stock in order to manipulate the value and price of the shares of stock.

30. That Defendants, and each of them, failed to disclose that they owned personal shares of ERI stock so that they could profit their own personal shares.

31. Plaintiffs are informed and believe, and thereon allege that, Defendants, and each of them, failed to disclose material facts, and inside information, concerning the revenue and growth of ERI or the full impact of the sale of ERI shares.

32. Plaintiffs have demanded the return and/or cancellation of the ERI Shares.

33. As of the date of the filing of this Complaint, the ERI Shares have not been returned to Plaintiffs and they have been deprived of their use, benefit and value nor have the Plaintiffs been paid for the share of stock. Plaintiffs ultimately did not discovery the full extent and/or nature of the schemes and malicious conduct herein alleged until late December, 2012 to the present date. Even now, the full extent and nature of Defendants' fraud and carelessly has not yet been disclosed or fully know, being intentionally concealed by the Defendants.

34. The Agreements provides for the award of attorney's fees to the prevailing party in the event of a claim or controversy.

**FIRST CAUSE OF ACTION FOR BREACH OF AGREEMENT**

**(AGAINST ALL DEFENDANTS)**

35. The Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 34, above, as though set forth in full herein.

36. The Agreement constituted a written contract between Plaintiffs and Defendants.

37. Plaintiffs performed its obligations under the terms of the Agreement by

selling/transferring shares without participation of Xinhua.

38. ERI has failed and refused, and continues to fail and refuse, to perform its obligations under the terms of the Agreement and has violated the terms of the Agreement in that Defendants transferred/sold shares without disclosing information, facts and transactions to Xinhua and its principals in violation of the Agreement.

39. As a result of the Defendants, and each of them, Plaintiffs sustained damages in an amount no less than $25,000,000.00, with the exact amount to be proved at trial.

**SECOND CAUSE OF ACTION FOR NEGLIGENCE**

**(AGAINST ALL DEFENDANTS)**

40. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 39, above, as though set forth in full herein.

41. In performing services as fiduciary and/or agent, Defendants acted negligently carelessly in that, negligently released the ERI Shares to a third parties without instruction or authorization from the Plaintiffs.

42. Defendants knew, or should have known, that the release of the Shares would cause loss and/or damages to Plaintiffs.

43. Defendants owed a duty, both general and fiduciary, to Plaintiffs to follow the escrow and act diligently, with due care, in being the holder of the Shares.

44. Defendants failed in their obligation to provide appropriate, competent and correct escrow and professional advice and counsel to the Plaintiffs. Defendants' practice, advice, counsel and activities related to Plaintiffs fell below the applicable standard of care and constituted professional negligence. Defendants negligently released shares of stock to third parties without following escrow instructions and guidelines. The defendants breached their duty to protect the Plaintiffs by not following escrow instructions. The defendants' acts were illegal. Therefore, it was professional negligence for ERI not taking actions that would have prevented Plaintiffs from becoming victims of an illegal scheme.

45. The negligence or other malfeasance committed by defendants included acts and omissions falling below the standard of care with respect to the guidelines for securities dealers and escrow holders.

46. Plaintiffs relied on Defendants' Agreement and representations.

47. As a result of Defendants' negligence, Plaintiffs were denied the use of the stock and have lost any ability to sell the stock.

48. Additional and/or related acts of negligence and other malfeasants committed by defendants against Plaintiffs are under investigation, analysis and review. Plaintiffs reserve the right to add additional allegations and defendants as they are known and/or discovered.

49. As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiffs sustained damages in an amount no less than $ 25,000,000.00, with the exact amount to be proved at trial.

**THIRD CAUSE OF ACTION FOR FRAUD**
**(AGAINST ALL DEFENDANTS)**

50. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 49, above, as though set forth in full herein.

51. Defendants represented to Plaintiffs that it would hold the Stock Certificates.

52. Defendants' representation regarding maintaining the Shares was false.

53. Defendants knew that the representation was false when the representations were made.

54. Defendants intended that Plaintiffs rely on the representation.

55. Plaintiffs' reliance on Defendants' representations was reasonable in light of Defendants relationship and Agreement with Plaintiffs.

56. As a direct and proximate result of the fraud of the Defendants and the facts alleged herein, Plaintiffs have suffered damages in an amount not less than

$ 25,000,000.

57. Defendants, and each of them, did things herein alleged oppressively and maliciously, And Plaintiffs is entitled to punitive or exemplary damages in an amount according to the trier of fact.

58. Plaintiffs are also entitled to an award of other general, special, exemplary and/or punitive damages in an amount to be determined at trial.

59. Plaintiffs are also entitled to an award of attorney's fees and costs in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**
**(AGAINST ALL DEFENDANTS)**

60. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 63, above, as though set forth in full herein.

61. Defendants were in a fiduciary and/or confidential relationship with Plaintiffs.

62. Defendants were effectively fiduciaries/escrow holders and agents of Plaintiffs. Defendants owed Plaintiffs strict fiduciary duties according to law. These include, but are not limited to, duties of highest good faith, loyalty, fidelity, integrity, avoidance of conflicting interest, full disclosure, fairness, and avoidance of the slightest threat or pressure exerted against Plaintiffs.

63. The fiduciary legal duties owed by defendants to Plaintiffs also include, but are not limited to, those duties attributable to escrow holders and securities dealers, which govern the relationship between Plaintiffs and their agents/escrow holders.

64. The defendants, and each of them, breached their duty to protect the Plaintiffs. The defendants' failure to properly disclose the transfer to third parties of the shares of stock and, in fact, the transfers themselves are acts that were illegal, improper and negligent. The acts and conduct of the defendants, and each of them is in violation of state and federal securities laws attributable to security dealers and/or fiduciaries.

65. The foregoing breach of fiduciary duty has injured Plaintiffs and the value of Plaintiffs' investment.

66. As a direct and proximate result of the fraud of the Defendants and the facts alleged herein, Plaintiffs have suffered damages in an amount not less than $25,000,000. Plaintiffs are also entitled to an award of other general, special, exemplary and/or punitive damages in an amount to be determined at trial. Plaintiffs are also entitled to an award of attorney's fees and costs in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION FOR SECURITIES FRAUD**

**(AGAINST ALL DEFENDANTS)**

67. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 66, above, as though set forth in full herein.

68. In doing the acts herein alleged, defendants, and each of them, acted in violation of Federal Securities laws and California Corporations Code, §§25400 et seq. and 25500 et seq.

**SIXTH CAUSE OF ACTION FOR CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS [R.I.C.O.]**

**(AGAINST ALL DEFENDANTS)**

69. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 68, above, as though set forth in full herein.

70. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, engaged in conduct, through ERI, through a pattern of racketeering and illegal activity, and to conspire to do so, and to wrongfully and unlawfully cause harm to Plaintiffs and others, all to the detriment of Plaintiffs and others.

71. Plaintiffs are informed and believe and thereon allege that during the relevant times herein, Defendants, and each of them, conspired with one another to cause harm to Plaintiffs and others, including public stockholders, by means of a complex pattern of individual transactions, threats, intimidation, illegal discrimination

and coercion to carry out a common plan and scheme to defraud Plaintiffs and others.

72. That Defendants, and each of them, used ERI as the enterprise, for the purpose of obtaining money and profit by means of fraud and coercion.

73. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, have engaged in at least two incidents unlawful predicate acts, during the period between January 2012 to the present date, that included, but were not limited to, mail fraud and wire fraud, within the meaning of 18 U.S.C.A. § 1341, illegal stock manipulation and trades, violations of state and federal securities laws, in an effort to carry out the common plan and scheme to embezzle and convert the certificates of Plaintiffs and cause injury and damages. That said predicate acts also consisted of communications carrying out the purpose of inducing Plaintiffs into believing that Shares would be held and protected.

74. Plaintiffs are further informed and believe that ERI and/or its officers and/or affiliates have engaged in other criminal and/or illegal conduct within the past five years and that certain officers and/or major stockholders are under investigation for such federal criminal acts, the exact nature of which is yet to be discovered. Defendants violated 18 U.S.C. §§ 1962 (a)(b)(c) and (d) by its illegal embezzlement of shares of stock and purported usurious loan sharking activity. Defendant, SHEGERIAN is the mastermind of the RICO activity. Plaintiffs are informed and believe that Mr. SHEGERIAN, embezzled and converted, through the guise of an escrow, shares of stock from Plaintiffs in order to use those shares to manipulate the market price of the stock to enhance his own personal (controlled) portfolio of same shares of stock. Shegerian did, in fact, trade his own shares of stock while at the same time holding the Plaintiffs' shares and refusing to transfer them or return them to Plaintiffs. Defendants' constant delays and machinations resulted in a loss of $25 million in value to Plaintiffs. – is the entity used by Shegerian in furtherance and conspiracy of the RICO activity. At this time, the Plaintiffs are unaware of other participants in the RICO scheme, other than those named defendants. It is believed that

the remaining violators, co-defendants, are either affiliates, agents and/or associates of John Shegerian, the mastermind of the RICO activity.

75. The Plaintiffs delivered to Defendants, particularly John Shegerian and ERI at least 1.920 million ERI shares Unbeknownst to Plaintiffs, SHEGERIAN had been trading his own shares of stock, believed to be through nominees and/or third parties, in ERI while secretly trying to avoid the impact of the sale of the Plaintiffs' shares to the market, thereby manipulating the market for his own personal gain. Plaintiffs are informed and believe that SHEGERIAN used his enterprise known as ERI to convince Plaintiffs to entrust him and turn over their shares of stock, while his obviously intended to hold back the effect on his shares of the placing of the ERI shares of Plaintiffs on the market. To this day SHEGERIAN and his affiliates have refused to return the shares of stock or value even though they realized a windfall of profits.

76. Plaintiffs are informed and believe that Defendants, particularly John Shegerian and ERI, engaged in a pattern of mail and wire fraud within the meaning of 18 U.S.C. § 1341 by embezzling [California Penal Code § 503] shares of stock and its value thereof for its own use and profit.

77. Plaintiffs are informed and believe that Defendants, and each of them, acted in complicity with each other based upon the direction and instructions of SHEGERIAN for the purpose of the furtherance of a well-orchestrated plan and scheme to defraud Plaintiffs.

78. The embezzlement of stock occurred between January, 2012 and continuing to the present.

79. SHEGERIAN, failed and refused to disclose his embezzlement of the shares of stock until late 2012 to the present date. SHEGERIAN, failed to disclose, that he had a personal interest in the shares of stock and a motive to embezzle the shares of Plaintiffs. Such information was ultimately discovered by Plaintiffs on or about late December 2012 and early 2013, with the full extent of the fraud and scheme yet to be discovered.

80. Plaintiffs are informed and believe, and thereby allege, that SHEGERIAN organized and plotted his scheme to defraud Plaintiffs by recruiting Wang to participate in his machinations so that both could profit and SHEGERIAN gains further control of ERI.

81. Defendants, and each of them, carried out these plots and schemes by use of the internet, wire, telephone and mail.

82. The predicate acts demonstrate a clear pattern of the Defendants to realize profits and advantage by the illegal use of money and stock to manipulate the stock market value of the subject shares of stock and engage in a pattern of illegal activity. This pattern has demonstrated to be ongoing and continuous even to the extent that the Defendants, to this day, refuse to return the shares of stock and/or its value which were wrongfully embezzled. There is no justification excuse for this conduct. The defendants' continuous pattern has been to delay the outcome of their conduct and this case so that they can gain more advantage.

**Enterprise**

83. The Defendants used a group of associations by the name of "ERI" to engage in a course of conduct.

84. John Shegerian is the mastermind and leader of this enterprise. Even though there is not a formal organization by this name, it is being used to identify all of Shegerian's illicit operations.

85. The purpose and function of the enterprise is believed to be to create the impression to unwary victims and investors that Shegerian's operations are legitimate and backed up by well establish companies.

86. Tammie Shegerian is an employee of ERI, and the one responsible for carrying out the various plots and schemes of SHEGERIAN.

87. Plaintiffs are informed and believe that the co-defendants are members of the enterprise or acted in concert with SHEGERIAN and the enterprise.

88. The collective group of participants of the ERI enterprise benefitted by

gaining money and shares of stock and personal salaries earned through illicit profits realized from the illegal activity.

**Interstate or Foreign Commerce**

89. The Defendants, and each of them, used telephone, U.S. Postal Mail, internet and wire in furtherance of their scheme between the states of Nevada, Delaware and California.

**Section 1962(a)**

90. Plaintiffs believe that Defendants, and each of them, received the income derived from the RICO activity.

91. Plaintiffs do not yet know of the extent of the use of income from the RICO activity, other than SHEGERIAN personally benefitted from the stock market manipulation and holding back of Plaintiffs shares of stock.

**Section 1962(b)**

92. Plaintiffs are informed and believe that SHEGERIAN established and controls all of the entities known as ERI.

**Section 1962(c)**

93. The co-defendants are either employed by, or affiliated with SHEGERIAN and the ERI enterprise. Specifically, Tammie Shegerian carried out the instructions and deceptions of SHEGERIAN and Defendants toward Plaintiffs and in furtherance with the scheme.

94. The enterprise is separate and distinct from the persons liable. SHEGERIAN is the head of the co-conspirators along with his affiliates and affiliated companies.

**Section 1962(d)**

95. Plaintiffs are informed and believe that the mastermind, SHEGERIAN, used his affiliates and had calculated understandings with them to gain advantage, money and profits by means of illegally embezzling shares of stock from Plaintiffs, refusing to disclose his interest or machinations, while each of the participants was

either silent or made affirmative representation that the shares of stock of Plaintiffs were going to be held in escrow until written instructions were given by Plaintiffs. There were no such instructions, but the shares were nonetheless sold and/or transferred by SHEGERIAN.

**Injury to Business or Property**

96. At least 1.920 million Shares of Stock have been converted and/or embezzled by Defendants. The shares of stock had a potential value of $ 25 million. Defendants have refused to return the stock or compensate Plaintiffs for their loss despite numerous and repeated demands. These shares were converted by means of Defendants pattern of criminal conduct and embezzlement.

97. As a proximate result of the above-mentioned acts of Defendants, and each of them, Plaintiffs have been deprived of the Shares and have suffered monetary damages in an amount according to proof.

98. That by reason of said conduct, and according to statute, that the damages alleged herein are trebled.

**SEVENTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE**

**(AGAINST ALL DEFENDANTS)**

99. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 98, above, as though set forth in full herein.

100. That business relationships and/or agreements, in writing and oral, exist between Plaintiffs and several of its customers and/or clients.

101. That Defendants, and each of them, knew about these agreements and business relationships.

102. That in doing the acts herein alleged Defendants, and each of them, intended to interfere with such business relationships and agreements that Plaintiffs possessed.

103. That said acts and conduct were made with the intent to harm Plaintiffs

financially and to induce third parties to not deal with Plaintiffs.

104. As a proximate result of the above-mentioned acts of Defendants, and each of them, Plaintiffs have been deprived the use and benefit of the Shares, all to their damage in an amount according to proof.

105. That by reason of Defendants, and each of their conduct, as herein alleged, Plaintiffs are entitled to an award of punitive damages in an amount according to the trier of fact.

**EIGHTH CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ADVANTAGE**

**(AGAINST ALL DEFENDANTS)**

106. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 105, above, as though set forth in full herein.

107. That during the times herein mentioned, Plaintiffs had business relationships, customers and solicited business that were both unique and/or necessary for the operation of the business.

108. That Defendants, and each of them, knew about these agreements and business relationships.

109. That in doing the acts herein alleged Defendants, and each of them, carelessly and negligently interfered with such business relationships and agreements that Plaintiffs possessed.

110. That said acts and conduct were carelessly caused harm to Plaintiffs financially and caused third parties to not deal with Plaintiffs.

111. As a proximate result of the above-mentioned acts of Defendants, and each of them, Plaintiffs have been deprived of the patronage of a large number of their actual and potential customers and/or distributors, all to their damage in an amount according to proof.

**NINTH CAUSE OF ACTION FOR QUASI-CONTRACT/RESTITUTION**

**(AGAINST ALL DEFENDANTS)**

112. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 111, above, as though set forth in full herein.

113. The defendants, and each of them, were unjustly enriched by millions of dollars as a result of the wrongful, illegal and unethical conduct.

114. Based upon all the foregoing reasons, and the facts herein alleged, a contract is implied by law between Plaintiffs and defendants, such that defendants are obliged to Plaintiffs, and a constructive trust may be imposed by the court in order that restitution be provided.

**TENTH CAUSE OF ACTION FOR DECLARATORY RELIEF**

**(AGAINST ALL DEFENDANTS)**

115. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 114, above, as though set forth in full herein.

116. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties with respect to the Agreement in that Plaintiffs contend that Defendants, and each of them, have refused and failed to perform their responsibilities under the Agreement; have breached that Agreement; have unilaterally modified the terms of such Agreement, and by their conduct and actions have been the direct and proximate cause of damages to Plaintiffs; whereas Defendants dispute these contentions.

117. Plaintiffs desire a judicial determination of their rights and duties regarding the Agreement, and a declaration as to whether Defendants, and each of them, are liable for all damages sustained by Plaintiffs.

118. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties under the Agreement among and between the parties herein.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER

**WHEREFORE**, Plaintiffs pray for damages and relief as follows:

**AS TO THE FIRST, SECOND, FOURTH AND EIGHTH CAUSES OF ACTION:**

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For reasonable attorney's fees in an amount according to proof and interest according to law;
4. For costs of suit herein;
5. For such other and further relief as the court may deem just and proper.

**AS TO THE THIRD, FIFTH AND SEVENTH CAUSES OF ACTION:**

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For exemplary damages according to the trier of fact;
4. For reasonable attorney's fees in an amount according to proof and interest according to law;
5. For costs of suit herein;
6. For such other and further relief as the court may deem just and proper.

**AS TO THE SIXTH CAUSE OF ACTION:**

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For exemplary damages according to the trier of fact;
4. That the damages be trebled;
5. For reasonable attorney's fees in an amount according to proof and interest according to law;
6. For costs of suit herein;
7. For such other and further relief as the court may deem just and proper.

**AS TO THE NINTH CAUSE OF ACTION:**

1. For the imposition of a constructive trust and restitution for the damages and losses suffered by Plaintiffs in an amount according to proof;
2. For reasonable attorney's fees in an amount according to proof and interest according to law;
3. For costs of suit herein;
4. For such other and further relief as the court may deem just and proper.

**AS TO THE TENTH CAUSE OF ACTION:**

1. For a declaration as to the rights and duties of the parties with respect to the agreements and writings referred to herein;
2. For attorney's fees in an amount according to proof;

3. For costs of suit herein; and

4. For such other and further relief as the court may deem just and proper.

Dated: August 30, 2013

**LAW OFFICES OF CARLOS F. NEGRETE**

By:______________________________

Carlos F. Negrete, Esq.
Attorney for Plaintiffs,
Xinhua Holdings Limited,
Xinhua Financial Network Limited and
Clean Tech Partners, LLC