# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **XINHUA HOLDINGS LIMITED, et al.,**<br><br>**Plaintiffs**<br><br>v.<br><br>**ELECTRONIC RECYCLERS INTERNATIONAL, INC., et al.,**<br><br>**Defendants** | CASE NO. 1:13-CV-1409 AWI SKO<br><br>**ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>(Doc. Nos. 8, 10) |

This is a dispute between Plaintiffs Xinhua Holdings Limited ("Xinhua Holdings"), Xinhua Financial Network Limited ("Xinhua Financial"), and Clean Tech Partners, LLC ("Clean Tech") and Defendants involving the transfer of corporate stocks. Before the Court is Defendants' motion to compel arbitration. For the reasons that follow, the motion will be granted.

## FACTUAL BACKGROUND

From the Complaint, Defendant Electronic Recyclers International, Inc. ("ERI") is a privately owned company, but soon is expected to be offered for public trading. At the times relevant herein, Plaintiffs owned 1.92 million shares of preferred stock in ERI.

On May 29, 2012, Plaintiffs entered into a Consulting Agreement with Defendant Yvonne Wang. Yvonne Wang was to act in a fiduciary capacity in favor of Plaintiffs with respect to the sale of the ERI stocks. Defendants did not perform under the terms of the Consulting Agreement, but instead allegedly engaged in fraudulent, deceptive, illegal, and undisclosed conduct that was

intended to create an unjust financial windfall to Defendants.

In December 2012, Defendants David Wang and Yvonne Wang entered into a secret undisclosed agreement with the other Defendants (particularly John and Tammie Shegerian) for the sale/transfer of the ERI stocks, under the guise of Plaintiffs' authority. As part of prior agreements,[1] Plaintiffs were entitled to a right of first refusal, along with prior notice, of any contemplated transfer or sale of ERI stocks by Defendants amongst themselves and/or third parties.

Plaintiffs transferred the 1.92 million ERI stocks pursuant to an agreement. However, Defendants had sold shares of ERI stock for their own benefit, and traded personal shares of ERI stock. The Defendants personally profited from the scheme to withhold Plaintiffs' share of stocks in order to manipulate the value and price of the stock. Defendants failed to disclose that they owned personal shares of ERI stock. Defendants also failed to disclose material information concerning the revenue and growth of ERI or the full impact of the sale of the ERI shares.

Plaintiffs have demanded the return and/or cancellation of the transferred ERI stocks. However, the stocks have not been returned to Plaintiffs or cancelled. During the time that Plaintiffs have been deprived of control of the stocks, the market price exceeded $3.00 per share.

## **DEFENDANTS' MOTION**

*Defendants' Argument*

Defendants argue that all of Plaintiffs' claims relate to a transaction to sell stocks to Defendants. However, the transaction is governed by a contract that contains a broad and unambiguous arbitration clause. The arbitration clause states that "any controversy or claim arising out of or relating this Agreement shall be exclusively resolved by arbitration." Further, the stock transfer agreement also incorporated a set of arbitral rules that require the issue of arbitrability to be determined by the arbitrator. Each of the claims alleged by Plaintiffs fall within the scope of the arbitration clause.

---

[1] Plaintiffs' complaint is ambiguous and unclear on several points, including prior agreements. It is possible that the "prior agreements" includes the Consulting Agreement.

1        As part of their reply brief, Defendants argue that there is no dispute that each of the
2 Plaintiffs' causes of action fit within the scope of the arbitration clause or that Yvonne Wang
3 signed the STA on behalf of Clean Tech.  Instead, Plaintiffs argue that the submitted STA is not
4 fully signed and that the parties who did not sign the STA are not subject to arbitration.  However,
5 another submitted copy of the STA shows that it was in fact signed by all of the contemplated
6 signatories – John Shegerian, Clean Tech, and ERI.  As for the parties who did not sign the STA,
7 the doctrines of equitable estoppel, agency, and derivative claims permit each Defendant to
8 compel each Plaintiff to arbitration, irrespective of the absence of a signature.
9        In response to Plaintiffs' sur-reply, Defendants argue that the STA was signed by
10 Shegerian in December 2012, and that the signatures were made in counterparts.  The Term Sheet
11 and the Modification referenced by Plaintiffs all pre-date the STA, and the Term Sheet itself
12 contemplates that an additional agreement would be created.  That additional agreement was the
13 STA.  As the latest agreement, the STA controls over the Term Sheet and the Modification to the
14 extent that there may be contradictions.  Finally, with respect to fraud regarding the STA as a
15 whole, because Plaintiffs do not challenge the arbitration itself, questions regarding fraud and the
16 STA are for the arbitrator to decide.  With respect to the "non-signatories argument," Plaintiffs
17 continue to fail to address the theories of estoppel, agency, and derivative claims, which permit
18 each Defendant to compel each Plaintiff to arbitration.

*Plaintiffs' Opposition*

20        Plaintiffs argue that it is inappropriate to order arbitration.  Plaintiffs allege that the stock
21 agreement submitted for review is not signed by Defendants, is signed only by Clean Tech, and
22 does not include the signatures of other parties to this lawsuit.  Because the document is not signed
23 by all relevant parties and not properly authenticated, Defendants have failed to show the
24 existence of an agreement to arbitrate.  Although Defendants have submitted two other documents
25 (a Term Sheet and a Written Consent), those documents do not contain or incorporate an
26 arbitration clause.  Alternatively, if the Court is inclined to grant Defendants' motion, the Court
27 should permit limited discovery on the issue of arbitration or permit amendment to the Complaint,
28 but it should not dismiss the Complaint with prejudice since there is no adjudication on the merits.

In sur-reply, Plaintiffs argue that they have not conceded the validity of the STA. The STA was signed by Yvonne Wang, but the STA was unauthorized by, and undisclosed to, the Plaintiffs. The STA was part of a fraudulent scheme. The conduct of Yvonne Wang is fraudulent and cannot be used to assert estoppel. Further, the newly submitted copy of the STA that is signed by both Yvonne Wang and John Shegerian is suspect. There is no indication of when the newly submitted STA was signed and there is no evidence other than Shegerian's self-serving declaration that the STA was intended to be signed in counter-parts. Further, the Term Sheet (dated July 3, 2012) and a Term Sheet Extension/Modification (dated October 1, 2012) contradict the STA in that there is no integration of or reference to the STA in those documents. The Term Sheet and the Modification were the agreements that Shegerian/ERI intended to enter with Plaintiffs, not the STA. If anything, the STA was effectively rejected by the Term Sheet. Finally, Plaintiffs reassert their arguments that the relevant documents submitted by Defendants are not authenticated, Defendants are improperly attempting to force non-signatories into arbitration, additional discovery and/or amendment may be necessary, and dismissal with prejudice is improper.

*Relevant Documents & Contractual Clauses*

On June 28, 2012, Xinhua Financial signed a document entitled "Written Consent of The Sole Stockholder of Clean Tech Partners, LLC" (hereinafter "the Written Consent"). See Second Shegerian Dec. Ex. C.[2] Through reference to the Delaware General Corporation Law, Xinhua Financial Network resolved that "with immediate effect, Ms. Wang-Liu Siu Hung, Yvonne be appointed as a Manager replacing Mr. Wang Chih-wen, David to handle all matters relating to the sale of Series A-1 Preferred Stock of [ERI] held by [Clean Tech], including without limitation, negotiate and conclude the terms of any agreements with any third party, sign and deliver such agreements . . . and take any other necessary corporate actions on behalf of [Clean Tech]." Id.

On July 3, 2012, John Shegerian mailed Yvonne Wang a document entitled "Clean Tech

---

[2] To the extent that Plaintiffs object to the Written Consent's authenticity, Paragraphs 2, 8, and 9 of John Shegerian's Second Declaration are sufficient to demonstrate both Shegerian's personal knowledge and that the document is what Defendants purport it to be. See Fed. R. Evid. 901(a), (b)(1); Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532-33 (9th Cir. 2011); Second Shegerian Dec. ¶¶ 2, 8, 9 & Ex. C.

Partners/ERI Shares/Term Sheet" (hereinafter "the Term Sheet"). See Kim Dec. Ex. B at Ex. B.[3] The Term Sheet explains that Shegerian is writing "in reference to discussions regarding the possible sale by Clean Tech Partners, LLC of its 1,920,000 shares of Series A-1 preferred stock of [ERI] to me and my wife, Tammy Shegerian." Id. The Term Sheet then characterized itself as a "non-binding offer to option the right to acquire the Shares," and acknowledges that such an option would be subject to a right of first refusal "by Xinhau Financial Network Limited . . . ." Id. The Term Sheet identifies seven features of the proposed option. See id. The Term Sheet states that, upon satisfaction of the terms, it will be superseded by a more formal document. See id.

On October 1, 2012, on ERI letterhead, John Shegerian mailed Yvonne Wang a document entitled "Clean Tech Partners/ERI Shares/Term Sheet Extension" (hereinafter "the Modification"). Kim Dec. Ex. B at Ex. D. The Modification referenced the July 3 Term Sheet. See id. The Modification discussed the exercise of the option created by the Term Sheet, including an October payment. See id. The Modification then provided that the Term Sheet was amended as follows: "Subject to the terms of the Terms Sheet, the Shegerians shall have an addition [sic] three (3) months added to the Option Period in which to exercise the option." Id. The Term Sheet otherwise remained in full force and effect. Id. The Modification was signed by John Shegerian and Clean Tech through Yvonne Wang. Id.

The Stock Transfer Agreement ("STA") reads that it was entered into as of December 17, 2012. See Kim Dec. Ex. A; Second Shegerian Dec. Ex. A. The STA states that it is between Clean Tech and John and Tammy Shegerian. See id. The STA purports to transfer 1,920,000 shares of Clean Tech's Series A-1 Preferred Stock in ERI to the Shegerians. See id. The STA states that it is to be construed in accordance with California law, and that it is the full and entire agreement between the parties. See id. Paragraph 12 contains an arbitration clause. See id. In pertinent part, the arbitration clause reads: "The Parties agree that any controversy or claim arising out of or relating to this Agreement shall be exclusively resolved by arbitration

---

[3] Plaintiffs object to the portion of the Kim Declaration in which Kim authenticates Exhibit B, a letter that Kim sent to Plaintiffs' counsel that included copies of the STA, the Written Consent, the Term Sheet, and the Modification. See Doc. No. 10-3. Plaintiffs' objection is not well taken. Kim states that he sent Exhibit B, which is sufficient to authenticate the letter. See Fed. R. Evid. 901(a), (b)(1); Las Vegas Sands, 632 F.3d at 532-33.

administered by JAMS in accordance with its rules, except as otherwise provided." Id.  The STA is signed by Yvonne Wang for Clean Tech, Linda Ramos as Corporate Secretary for ERI, and John Shegerian on behalf of himself and Tammy Shegerian.[4]  See id.

*Legal Standard*

The Federal Arbitration Act ("FAA") permits, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); Chiron, 207 F.3d at 1130.  The role of the courts under the FAA is to determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If both questions are answered in the affirmative, the [FAA] requires the court to enforce arbitration."  Kilgore v. KeyBank, N.A., 718 F.3d 1052, 1058 (9th Cir. 2013); Chiron, 207 F.3d at 1130.

The FAA provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).  In determining the validity of an agreement to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Adams, 279 F.3d at 892.  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.  Courts may not,

---

[4] Plaintiffs object that Defendants have not authenticated the STA, and nothing supports Shegerian's declaration that the STA was signed in counterparts.  However, Paragraphs 2, 4, 5, and 6 of Shegerian's Second Declaration demonstrate personal knowledge of the STA and that the submitted STA is what it is claimed to be.  Thus, the STA has been properly authenticated.  See Fed. R. Evid. 901(a), (b)(1); Las Vegas Sands, 632 F.3d at 532-33; Second Shegerian Dec. ¶¶ 2, 4, 5, 6.  Paragraphs 2, 4, 5, and 6 also provide a sufficient basis to conclude that the STA was signed in counterparts.   Plaintiffs submit no evidence that indicates the STA could not have been signed in counterpart or was not actually signed in counterpart.  Plaintiffs' objections to the fully signed STA are overruled.

1  however, invalidate arbitration agreements under state laws applicable only to arbitration
2  provisions." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (2000); Adams, 279 F.3d at
3  892; Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936-37 (9th Cir. 2001).  When a plaintiff
4  does not challenge the validity of the contract as a whole, but instead argues that only the
5  arbitration clause is invalid, then the court is to decide the validity of the arbitration clause.
6  Bridge Fund, 622 F.3d at 1000-01; Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir.
7  2006).  When a plaintiff's legal challenge is that a contract as a whole (as opposed to only the
8  arbitration clause) is unenforceable, the arbitrator decides the validity of the contract.  See
9  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006); Bridge Fund Capital
10 Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1000 (9th Cir. 2010).  However, arguments that
11 challenge whether a contract ever existed must be decided by the court before arbitration can be
12 ordered.  See Sanford v. Memberworks, Inc., 483 F.3d 956, 962 & n.8 (9th Cir. 2007); Three
13 Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir. 1991).

14     "[A]rbitration is a matter of contract and a party cannot be required to submit any dispute
15 which he has not agreed so to submit." AT & T Tech's, Inc. v. Communications Workers, 475
16 U.S. 643, 648 (1986); Three Valleys, 925 F.2d at 1139.  Thus, as a general matter, a contractual
17 right to arbitration "may not be invoked by one who is not a party to the agreement and does not
18 otherwise possess the right to compel arbitration." Britton v. Co-Op Banking Group, 4 F.3d 742,
19 744 (9th Cir. 1993).  However, there are legal theories, such as agency and estoppel, in which non-
20 signatories to an arbitration agreement may compel or be compelled to arbitration.  See Murphy v.
21 DirecTV, Inc., 724 F.3d 1218, 1229-34 (9th Cir. 2013); Comer v. Micor, Inc., 436 F.3d 1098,
22 1101 (9th Cir. 2006); DMS Services, Inc. v. Superior Ct., 205 Cal.App.4th 1346, 1353 (2012).
23 "Traditional principles of state law" determine whether a "contract [may] be enforced by or
24 against nonparties to the contract . . . ." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631
25 (2009); see Murphy, 724 F.3d at 1229.

26     For purposes of deciding a motion to compel arbitration, the Court may properly consider
27 documents outside of the pleadings.  See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263
28 F.3d 26, 32 (2d Cir. 2001); Cherrone v. Florsheim Dev., 2012 U.S. Dist. LEXIS 172778, 6 n.1

1  (E.D. Cal. Dec. 4, 2012); Swanson v. Prof'l Serv. Indus., 2012 U.S. Dist. LEXIS 47409, 4-5
2  (D.S.C. Jan. 4, 2012); BS Sun Shipping Monrovia v. Citgo Petroleum Corp., 2006 U.S. Dist.
3  LEXIS 54588, *10, n. 6 (S.D.N.Y. 2006).  Further, if the making of an arbitration agreement is "in
4  issue," then the court is to proceed summarily to trial on the issue, although the party resisting
5  arbitration may demand a jury trial.  See 9 U.S.C. § 4; Par-Knit Mills, Inc. v. Stockbridge Fabrics
6  Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980); Geoffroy v. Washington Mutual Bank, 484 F.Supp.2d
7  1115, 1119 (S.D. Cal. 2007).  "In order to show that the validity of the agreement is 'in issue,' the
8  party opposing arbitration must show a genuine issue of material fact as to the validity of the
9  agreement to arbitrate."  Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002); see
10 Hancock v. AT&T Co., 701 F.3d 1248, 1261 (10th Cir. 2012); Bensadoun v. Jobe-Riat, 316 F.3d
11 171, 175 (2d Cir. 2003); O.N. Equity Sales Co. v. Thiers, 590 F.Supp.2d 1208, 1211 (D. Ariz.
12 2008).  The required showing mirrors the showing that is necessary to defeat summary judgment.
13 Aliron Intl., Inc. v. Cherokee Nation Indus., 531 F.3d 863, 865 (D.C. Cir. 2008); Bensdoun, 316
14 F.3d at 175; Great Earth, 288 F.3d at 889; Geoffroy, 484 F.Supp.2d at 1119.  As such, courts give
15 the opposing party the benefit of all reasonable doubts and inferences that may arise.  Three
16 Valleys, 925 F.2d at 1141.

*Discussion*

1. Validity of Arbitration Agreement

Plaintiffs' challenge to the arbitration agreement in the STA is a challenge to the STA as a whole, it is not directed at the arbitration clause itself.  Plaintiffs in essence make three arguments against the STA:  (1) the STA is void because Plaintiffs did not authorize Wang to enter the agreement; (2) neither copy of the STA has been properly authenticated; and (3) the STA is not operative, rather the Term Sheet and the Modification is the operative agreement which essentially rejected the STA.  The Court is not persuaded by any of these arguments.

First, as discussed in Footnote 4 above, John Shegerian's Second Declaration properly identified and authenticated the STA.  Shegerian is a signatory of the STA, he is the Chief Executive Officer of ERI, he has had extensive dealings with Plaintiffs, he has personal knowledge of the STA, and he identified the STA as the document that was signed by the relevant

parties in counterparts. That is sufficient to authenticate the fully signed STA. See Fed. R. Evid. 409(a), (b)(1); Las Vegas Sands, 632 F.3d at 532-33; Second Shegerian Dec. ¶¶ 2, 4, 5, 6.

Second, there is no evidence before the Court that the Term Sheet and Modification are in effect and represent a rejection of the STA. A significant problem with Plaintiffs' argument is that the STA was executed in December 2012, while the Term Sheet was executed in July 2012 and the Modification was executed in October 2012.[5] Because the STA post-dates both the Term Sheet and the Modification, and states that it is the full agreement between the parties, it is unknown how the Term Sheet and Modification could be a rejection of the STA. Cf. Frangipani v. Boecker, 64 Cal.App.4th 860, 863 (1998) ("When there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former."). Further, the Term Sheet states that it is a non-binding offer to create an option to buy stocks and that, upon satisfaction of the terms listed, "it is intended that this Term Sheet shall be *superseded* by a more formal document customary to transactions of this nature . . . ." Kim Dec. Ex. B at Ex. B (emphasis added). The Modification gave the Shegerians an additional 3 months to exercise the option created by the Term Sheet, and it expressly stated that that the Term Sheet remains "in full force and effect." Kim Dec. Ex. B at Ex. D. Thus, taken together, the Modification and the Term Sheet envision a subsequent and more formal document for the sale of the ERI stocks. The STA, which provides for the transfer of the ERA stocks, appears to represent a "more formal document" and appears to fall within the provisions of the Term Sheet. Plaintiffs have not presented sufficient evidence or made sufficient arguments for the Court to conclude that the parties rejected the STA in favor of the Term Sheet and the Modification.[6]

Finally, as the Court understands Plaintiffs' argument, Wang was unauthorized to sign the

---

[5] Plaintiffs imply that the STA was not signed in December 2012. However, the STA itself indicates that it was signed in December 2012, and was effective on December 17. See Second Shegerian Dec. Ex. A. Further, John Shegerian has submitted evidence of a wire transfer dated December 20, 2012. See id. at Ex. B. The Court agrees with Defendants that the wire transfer corroborates the express language of the STA and a December 2012 signing date. In contrast, Plaintiffs have submitted no evidence that the STA was not signed in December 2012. There is insufficient evidence for the Court to conclude that the STA was signed sometime other than December 2012.

[6] The Court notes that Plaintiffs have characterized the Term Sheet and the Modification as offers, not actual agreements. See Negrete Dec. ¶ 10. If the Term Sheet and Modification are not agreements, then it is unclear how they could contradict the signed STA.

1  STA and only did so as part of a fraudulent scheme. Such an argument raises the issue of whether
2  the STA ever legally existed because the agent was unauthorized. See Three Valleys, 925 F.2d at
3  1139-41; cf. St. Agnes Med. Ctr. V. PacifiCare of Cal., 31 Cal.4th 1187, 1199-00 (2003). Since
4  the legal existence of the STA is implicated, Defendants are incorrect that the issue is for the
5  arbitrator to resolve. See Sanford, 483 F.3d at 962 & n.8; Three Valleys, 925 F.2d at 1140-41; see
6  also Buckeye Check, 546 U.S. at 444 n.1. The issue of whether the STA was signed without
7  authorization is to be determined by this Court. See id. Although Defendants are incorrect about
8  who is to decide the issue, the evidence submitted is sufficient for the Court to make a ruling.

9       Here, the Complaint alleges that all Plaintiffs entered into a consulting agreement with
10 Yvonne Wang, whereby Wang would act as a fiduciary with respect to sale of the ERI stocks. See
11 Complaint ¶ 4. No limitations on Wang are identified with respect to the consulting agreement.
12 See id. The signed STA would be consistent with Yvonne Wang acting for Plaintiffs in the sale of
13 the ERI stocks. Also, and of critical importance, Defendants have submitted the Written Consent.
14 The Written Consent is properly authenticated by John Shegerian. See Fed. R. Evid. 409(a),
15 (b)(1); Las Vegas Sands, 632 F.3d at 532-33; Second Shegerian Dec. ¶¶ 2, 8, 9 & Ex. C. As
16 discussed above, the Written Consent is signed by Xinhua Financial as the sole stockholder of
17 Clean Tech. The Written Consent authorizes Yvonne Wang to "handle all matters" relating to the
18 sale of Clean Tech's ERI shares. The grant of authorization was without limitation, and expressly
19 authorized Yvonne Wang to negotiate and conclude the terms of any agreements, to sign and
20 deliver agreements, and to do any other necessary corporate actions on behalf of Clean Tech. See
21 Second Shegerian Dec. Ex. C. The STA clearly fits within the powers and authorization granted
22 to Yvonne Wang by the Written Consent.

23      Plaintiffs have submitted no evidence that calls into question Yvonne Wang's authority to
24 sign the STA. Particularly noticeable is the absence of any declarations on behalf of Plaintiffs that
25 expressly deny that Wang had authority to sign the STA, that describe what authority Wang had,
26 or that in any way disputes the Written Consent. It is insufficient for Plaintiffs to rely on bare,
27 unsupported allegations. See Sphere Drake, 263 F.3d at 32. There is no evidence before the Court
28 that creates a genuine dispute of material fact regarding either the legal existence of the STA or

the authority of Yvonne Wang to enter into/sign the STA. See id. In the absence of any evidence to the contrary, the Court concludes that Yvonne Wang was authorized to sign the STA on behalf of Clean Tech.

Accordingly, the STA exists and contains a valid agreement to arbitrate.[7]

### 2. Non-Signatories

Yvonne Wang on behalf of Clean Tech, John Shegerian on behalf of himself and Tammy Shegerian, and Linda Ramos on behalf of ERI all signed the STA. At a minimum Wang, the Shegerians, Ramos, Clean Tech and ERI may compel or be compelled to arbitration. See Prograph Int'l v. Barhydt, 928 F.Supp. 983, 990 (N.D. Cal. 1996). Defendants rely on the theories of estoppel, agency, and derivative claims to argue that the non-signatory parties are subject to the STA's arbitration clause. Plaintiffs have not addressed these theories and instead state that non-signatories cannot compel or be compelled to arbitration. The Court agrees with Defendants.

Agents may enforce arbitration agreements where their principals are parties to the agreements. Creative Telcoms. v. Breeden, 120 F.Supp.2d 1225, 1240-41 (D. Haw. 1999); Prograph, 928 F.Supp. at 990; Dryer v. Los Angeles Rams, 40 Cal.3d 406, 418 (1985); Ronay Family Ltd. P'shp v. Tweed, 216 Cal.App.4th 830, 838 (2013). It also has been held that arbitration agreements signed by corporations may be utilized by corporate directors. See Prograph, 928 F. Supp. at 990.

Here, the non-signatory defendants in this case are David Wang, Kevin Anton, Keith Bronstein, Yong-Seok Jeong, and Alexander Ruckdashel. All of these individuals, except for David Wang, are members of ERI's board of directors. See Second Shegerian Dec. ¶ 3. Further, the Complaint alleges that: "Each and every Defendant was the agent, employee, joint venture, principal, predecessor, or successors in interest and/or the alter ego of each of the remaining Defendants, and in doing the things herein alleged, were acting . . . in furtherance of the purpose, scope and course of said agencies, service employment, joint ventures, partnerships, corporate structures and/or associations . . . ." Complaint ¶ 23. Given this allegation, as well as the corporate director status of Anton, Bronstein, Jeong, and Ruckdashel, there is a sufficient agency

---

[7] The Court expresses no opinions as to any other defenses that Plaintiffs may assert to the STA.

11

relationship between the signatory Defendants and the non-signatory Defendants such that the non-signatory Defendants may enforce the STA's arbitration clause. See Prograph, 928 F.Supp. at 990 (holding that non-signatory directors could enforce an arbitration agreement); Dryer, 40 Cal.3d at 418 (holding that complaint's allegation of an agency relationship between individuals and corporation was sufficient for court to order entire dispute to arbitration); Ronay, 216 Cal.App.4th at 838 (relying in part on allegations in the complaint of agency relationship); Thomas v. Westlake, 204 Cal.App.4th 605, 614 (2012) (recognizing that an allegation of agency is sufficient for a non-signatory individual to enforce arbitration agreement).

The non-signatory Plaintiffs in this case are Xinhua Financial and Xinhua Holdings. Xinhua Financial is the sole shareholder of Clean Tech. See Second Shegerian Dec. ¶ 8 & Ex. C. Xinhua Holdings is the parent company of Xinhua Financial. See Second Shegerian Dec. ¶ 9. The Complaint states in pertinent part that: (1) the 1.92 million shares of ERI stock at issue were owned by Plaintiffs, without any distinction as to how the stocks were owned by the Plaintiffs or how many shares of stock were owned by each Plaintiff; (2) all Plaintiffs entered a consulting agreement with Yvonne Wang to act as a fiduciary on their behalf in the sale of the ERI stocks; and (3) all Plaintiffs delivered the 1.92 million shares of stock to Defendants. See Complaint ¶¶ 3, 4, 75. Additionally, the Complaint makes no distinctions among the Plaintiffs in terms of injuries suffered, duties owed, or breaches of care.

"A non-signatory can be compelled to arbitrate when a preexisting relationship existed between the non-signatory and one of the parties to the arbitration agreement, making it equitable to compel the non-signatory to arbitrate as well." JSM Tuscany, LLC v. Superior Ct., 193 Cal.App.4th 1222, 1240 (2011); see also Murphy, 724 F.3d at 1232. Non-signatory corporations have been compelled to arbitration based on "arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the non-signatory corporation do not differ substantially from those against its signatory affiliate." Prograph, 928 F. Supp. at 990; see also Metalclad Corp. v. Ventana Envtl. Org'l P'ship, 109 Cal.App.4th 1704, 1718 (2003).

Here, there is a pre-existing relationship between the Plaintiffs that makes it equitable to enforce the STA's arbitration clause. Xinhua Financial is the only shareholder of Clean Tech.

1  Xinhua Financial owned some portion of the ERI stocks, and delivered the shares it owned to
2  Defendants.  Xinhua Financial makes no claims that are separate or different in any way from
3  Clean Tech or Xinhua Holdings.  Based on the Written Consent, it was Xinhua Financial who
4  formally appointed Yvonne Wang to act on behalf of Clean Tech for the sale of the ERI stocks.
5  Xinhua Financial had also entered into the consulting agreement with Yvonne Wang for the sale
6  of the ERI stocks.  Thus, Xinhua Financial was fully aware of, and appears to have fully
7  authorized, an attempted sale of the ERI stocks by Yvonne Wang through Clean Tech.  Similarly,
8  Xinhua Holdings is the parent corporation of Xinhua Financial.  Xinhua Holdings is the owner of
9  some portion of the 1.92 million shares of the ERI stock at issue, and Xinhua Holdings delivered
10 its shares to Defendants.  Xinhua Holdings makes no claims that are separate or different in any
11 way from Clean Tech or Xinhua Financial.  Xinhua Holdings entered into the consulting
12 agreement with Yvonne Wang for the sale of the ERI stocks.  Further, the Written Consent given
13 by Xinhua Financial appears to have included the stock owned by Xinhua Holdings.  The
14 consulting agreement with Yvonne Wang, the Written Consent, and the parent corporation status
15 to Xinhua Financial all indicate that Xinhua Holdings would have been aware of the contemplated
16 sale of its ERI stocks.  In light of the consulting agreement with Yvonne Wang regarding sale of
17 the stock, the Written Consent, the failure to separate or distinguish ownership in the stocks at
18 issue between the three Plaintiffs, the failure to allege any unique claims or injuries between the
19 Plaintiffs, the delivery of the stocks to Defendants, and the corporate interests and structures
20 involved between the three Plaintiffs, there is clearly a pre-existing relationship between all
21 Plaintiffs.  It is unclear how it would be inequitable to hold Xinhua Financial and Xinhua Holdings
22 to the STA's arbitration clause.  See Prograph, 928 F.Supp. at 990; JSM Tuscany, 193
23 Cal.App.4th at 1240; see also Murphy, 724 F.3d at 1232.

24         Additionally, equitable estoppel may apply to non-signatories when a party's claims are
25 intimately founded in and intertwined with the underlying contract.  Murphy, 724 F.3d at 1230;
26 JSM Tuscany, 193 Cal.App.4th at 1238; Metalclad, 109 Cal.App.4th at 1717.  Equitable estoppel
27 may be applied against non-signatory plaintiffs, particularly where the signatory and non-
28 signatory parties are related entities.  JSM Tuscany, 193 Cal.App.4th at 1239-41; see also

13

Lindemann v. Hume, 204 Cal.App.4th 556, 570 (2013). "A non-signatory plaintiff can be compelled to arbitrate a claim even against a non-signatory defendant, when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause." JSM Tuscany, 193 Cal.App.4th at 1241; see also Tamsco Props., LLC v. Loral Langemeier, 2013 U.S. Dist. LEXIS 8646, *13 (E.D. Cal. Jan. 22, 2013).

Here, Defendants contend that all of the causes of action are intertwined with or based on the STA. Plaintiffs do not refute this assertion. Cf. Cortez v. New Century Mortg. Corp., 2012 U.S. Dist. LEXIS 13469, *12 n.3 (N.D. Cal. Feb. 3, 2012) (holding the failure to respond to an argument about the nature of a claim was a concession of the defendant's characterization of that claim); In re Fresh & Process Potatoes Antitrust Litig., 834 F.Supp.2d 1141, 1169 (D. Idaho 2011) (same). Each of the causes of action appears to stem from either actions that caused the execution of the STA, actions that caused the transfer of the stocks under the STA, or the actual transfer of ERI stocks through the STA.[8] Each cause of action will depend upon the propriety of the transfer of stocks under the STA or the propriety of the signing of or entering into the STA. Furthermore, an examination of the terms of the STA itself and the negotiations and actions surrounding the formation of the STA would also likely be necessary. Without further argument or clarification from Plaintiffs, the Court concludes that each of Plaintiffs' causes of action stem from and/or are inextricably intertwined with the STA. See Simpson v. Pulte Home Corp., 2012 U.S. Dist. LEXIS 63889, *17 (N.D. Cal. May 7, 2012); Metalclad, 109 Cal.App.4th at 1718; see also JSM Tuscany, 193 Cal.App.4th at 1239-41.

In light of the above analysis, all non-signatory Defendants may compel all non-signatory Plaintiffs to arbitration. See Murphy, 724 F.3d at 1230-32; Prograph, 928 F.Supp. at 990; JSM Tuscany, 193 Cal.App.4th at 1238-41; Metalclad, 109 Cal.App.4th at 1718.

---

[8] The breach of contract claim involves the transfer of the stocks, the negligence claim deals with permitting the release/transfer of the stocks, the fraud claim relates to representations regarding the maintenance of the transferred stocks, the fiduciary duty claim deals with the transfer of the stocks and disclosures regarding other transfers, the securities fraud claim by its nature involves the transfer of the stocks, the RICO claim involves the transfer of the stock, the interference with prospective advantage claims are based on the loss of ownership of the stocks through the transfer, the quasi contract claim is based on the transfer of the stocks, and the declaratory relief request appears to deal with the transfer of the stocks and related disclosures. See Doc. No. 1.

### 3. Scope Of Arbitration Clause

The scope of an arbitration clause is governed by federal law. Tracer Research Corp. v. National Envtl. Servs., Co., 42 F.3d 1292, 1294 (9th Cir. 1994). Arbitration clauses that use phrases such as "arising out of or relating to" or "arising in connection with" are considered to be broad in scope. Cape Flattery Ltd. v. Tital Mar., LLC, 647 F.3d 914, 922-23 (9th Cir. 2011); Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727, 732 (9th Cir. 2006). To require arbitration, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999). "[A]rbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Comedy Club, Inc. v. Improve West Assocs., 553 F.3d 1277, 1284 (9th Cir. 2009).

Here, the STA contains a broad arbitration clause that covers "any controversy or claim arising out of or relating to this Agreement . . . ." Second Shegerian Dec. Ex. A; cf. Schoenduve, 442 F.3d at 732-33; Chiron, 207 F.3d at 1131. Defendants argue that each of the claims alleged against them stem from either the transfer of ERI stocks under the STA or relates to actions taken to cause the transfer of shares to occur. Plaintiffs do not address this argument or dispute the assertion. Cf. Cortez, 2012 U.S. Dist. LEXIS 13469 at *12 n.3; In re Fresh & Process Potatoes, 834 F.Supp.2d at 1169. The factual matters alleged in the Complaint appear to "touch matters" covered by the STA. As discussed above, it appears that the causes of action stem from and/or are intertwined with the STA, which was the mechanism for transferring the 1.92 million shares of ERI stock from Plaintiffs to Defendants. See Simula, 175 F.3d at 721. Without more from Plaintiffs, the Court cannot say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers Plaintiffs' claims. See Comedy Club, 553 F.3d at 1284. The Court concludes that all of Plaintiffs' claims "relate to" the STA and thus, fit within the scope of the STA's arbitration clause.

### 4. Requested Dismissal

Where a court determines that a dispute is subject to an arbitration clause, the court "shall

on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.  Despite the apparently mandatory nature of a § 3 stay, courts have the discretion to dismiss the case if all of the alleged claims are subject to arbitration.  See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); Monzon v. Southern Wine & Spirits of Cal., 834 F.Supp.2d 934, 943 (N.D. Cal. 2011); Luna v. Kemira Specialty, Inc., 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008).

Here, there is little utility in staying this case.  The Court has determined that all of Plaintiffs' claims are subject to the arbitration clause of the STA, which makes dismissal a viable alternative to a stay.  See id.  Plaintiffs request limited discovery and leave to amend.  However, Plaintiffs have not submitted any declarations that indicate what would be discovered, nor have they submitted any declarations or other evidence that contradicts the evidence submitted by Defendants.  Defendants' evidence shows that arbitration is appropriate.  Without declarations or evidence from Plaintiffs that actually refutes Defendants, Plaintiffs have not shown that either amendment or limited discovery would change the result of this order.  Thus, the Court will not permit limited discovery or amendment.  Because all claims are subject to arbitration, the Court will exercise its discretion and dismiss this case without prejudice to pursuing arbitration.  See Oakley v. GMRI, Inc., 2013 U.S. Dist. LEXIS 139896, 6-7 (E.D. Wash. Sept. 27, 2013) (dismissing case without prejudice because all claims were subject to arbitration).

## **CONCLUSION**

Defendants move to compel arbitration of all the claims alleged in the Complaint.  Defendants have shown that the STA legally exists and contains a broad and expansive arbitration clause.  Defendants also have shown that all non-signatory parties in this case may compel, or be compelled into, arbitration.  Because all of the claims are subject to arbitration, the Court will grant Defendants' motion to compel.  Instead of issuing a stay, however, the Court will dismiss this case without prejudice.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel arbitration is GRANTED;
2. Plaintiffs' complaint is DISMISSED without prejudice to Plaintiffs pursing arbitration of their claims, consistent with the STA's arbitration clause; and
3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   December 24, 2013                              _____
                                                                    SENIOR  DISTRICT  JUDGE

17